Charles C. Weller (SBN: 207034)
legal@cweller.com
CHARLES C. WELLER, APC
11412 Corley Court
San Diego, California 92126
Tel: 858.414.7465
Fax: 858.300.5137

Attorney for Plaintiff Janet Gambino

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANET GAMBINO, *individually and on behalf of all those similarly situated*, ) ) ) | |
| Plaintiff, ) | No. _____ |
| ) | |
| *v.* ) | **CLASS ACTION COMPLAINT** |
| ) | |
| OLE MEXICAN FOODS, INC., *a Georgia corporation*, ) ) ) | JURY TRIAL DEMANDED |
| Defendant. ) ) | |

_____

     Janet Gambino ("Plaintiff"), individually and on behalf of all others similarly situated in the state of California, by and through undersigned counsel, hereby brings this action against Ole Mexican Foods, Inc. ("Ole" or "Defendant"), alleging that its Xtreme Wellness Tortilla Wraps ("the Products"), which are manufactured, packaged, labeled, advertised, distributed, and sold by Defendant, are misbranded and falsely advertised because they feature deceptive claims regarding the amount of dietary fiber, total and net carbohydrates, and calories in each serving, and upon information and belief and investigation of counsel alleges as follows:

### PARTIES

    1.    Plaintiff Janet Gambino is and at all times relevant was a citizen of the state of California, domiciled in Temecula, California.

2.      Defendant Ole Mexican Foods, Inc. is a Georgia corporation with its principal place of business in Norcross, Georgia. On information and belief all decisions regarding formulation and labeling of the Products are made at this principal place of business.

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act, Pub. L. 109-2, 119 Stat. 4 (codified in scattered sections of Title 28 of the United States Code); specifically, under 28 U.S.C. § 1332(d), which provides for the original jurisdiction of the federal district courts over "any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and [that] is a class action in which . . . any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A).

4.      Plaintiff seeks to represent Class members who are citizens of states different from the Defendant.

5.      The matter in controversy in this case exceeds $5,000,000 in the aggregate, exclusive of interests and costs.

6.      In addition, "the number of members of all proposed plaintiff classes in the aggregate" is greater than 100. *See* 28 U.S.C. § 1332(d)(5)(B).

7.      In the alternative, the Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a). The amount in controversy exceeds $75,000, exclusive of interests and costs.

8.      This Court has personal jurisdiction over Defendant because this action arises out of and relates to Defendant's contacts with this forum.

9.      Those contacts include but are not limited to sales of the Products directly to commercial and individual consumers located in this district, including Plaintiff; shipping the Products to commercial and individual consumers in this district, including Plaintiff; knowingly directing advertising and marketing materials concerning the Products into this district through wires and mails, both directly and through electronic and print publications that are directed to commercial and individual consumers in this district; and operating an e-commerce web site

that offers the Products for sale to commercial and individual consumers in this district, as well as offering the Products for sale through third-party e-commerce websites, through both of which commercial and individual consumers residing in this district have purchased the Products.

10.    Defendant knowingly directs electronic activity and ships the Products into this district with the intent to engage in business interactions for profit, and it has in fact engaged in such interactions, including the sale of the Products to Plaintiff.

11.    Defendant also sells the Products to retailers and wholesalers in this district for the purpose of making the Products available for purchase by individual consumers in this district.

12.    Plaintiff's losses and those of other Class members were sustained in this district.

13.    Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within this district.

14.    Venue is also proper pursuant to 28 U.S.C. § 1391(c)(2) because this Court maintains personal jurisdiction over Defendant.

**FACTUAL ALLEGATIONS**

15.    The past several decades have seen the rise of low-carbohydrate diets such as the Atkins, paleo, or keto diets, which require adherents to carefully track "macros," or the amount of carbohydrates and other nutrients they consume each day.

16.    Central to the tracking of macros is accurate nutritional labeling of foods and dietary supplements. Consumers have been conditioned to rely on the disclosures made in Nutrition Facts panels on foods and other labeling statements about nutritional content. As noted by U.S. Food and Drug Administration ("FDA") Commissioner Margaret Hamburg during an October 2009 media briefing, "[s]tudies show that consumers trust and believe the nutrition facts information and that many consumers use it to help them build a healthy diet."

17.    Plaintiff Janet Gambino is one of those millions of Americans. A retiree, she attempts to maintain her weight by following a low carbohydrate diet. As such, she tracks her

net carbohydrate intake in order to adhere to the requirements of the diet. Accurate nutritional labeling is therefore important to Ms. Gambino, and she reads the labels of food products to understand the net carbohydrates and total calories in the foods she consumes.

18.    As part of this effort and to assist in adhering to a low carbohydrate diet, Plaintiff purchased the Products at a Wal-Mart Supercenter in Temecula, California numerous times over the past four years, including most recently on September 22, 2024.

19.    The Products make two express representations on the front label (or "principal display panel") that they contain 4 grams of net carbs per serving. The same representation is made on the back label.



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20



21      20.    The Products also claim, on both the front and back labels, to be "High Fiber,"

22  "Carb Friendly," and "Keto Certified," the latter statement meaning they are useful in

23  maintaining a ketogenic or low-carb diet.

24      21.    Net carbs are calculated by subtracting the amount of dietary fiber from the

25  amount of total carbohydrates. The Products actually feature this calculation on the back label:

26
27
28



22.    In the Nutrition Facts panel on the back label, Defendant also states that the Products contain 12 grams of fiber and 16 grams of total carbs, for 4 grams of net carbs.

23.    At the undersigned's direction, the Products were tested on or about September 4, 2024 by EMSL Analytical, a highly reputable third-party food testing laboratory. Testing methods employed included AOAC 923.03, AOAC 925.09, AOAC 982.14, AOAC 991.36, AOAC 991.43, and AOAC 992.15. That testing revealed that total dietary fiber in the Products was actually 9.45 grams per serving, while total carbs were actually approximately 20.12 grams per serving. This means that the actual net carbs in a serving of the Products is approximately 10.67 grams per serving—more than two-and-a-half times the 4 grams net carbs per serving stated on the label.

24.    Meanwhile, the same testing conducted pursuant to 21 C.F.R. § 101, which governs food labeling standards set by the FDA, revealed that the Products contain 115.2 calories per serving, and not the 60 calories per serving stated on the label.

25.    Plaintiff conducted additional dietary fiber testing of the Products by Eurofins Laboratories (under contract with EMSL) on or about December 10, 2024, using AOAC

methods 2011.25 and 2009.01. According to the FDA, AOAC 2011.25 method (also referred to as the Codex Fiber method) is the best method for accurately measuring dietary fiber in ingredients and finished products. Eurofins is also a highly regarded independent food analysis laboratory.

26.    Testing using this method found that total dietary fiber constituted 16.3 percent of a 100-gram sample, or 7.33 grams of dietary fiber in a 45-gram serving of the Products—far less than the 12 grams of dietary fiber claimed on the label. Given this shortfall, it is not possible that the Products contain only 4 grams of net carbs per serving.

27.    These testing results establish that Defendants' express representations that the Products contain 4 grams of net carbs, 60 calories per serving, and are "High Fiber," "Carb Friendly," and appropriate for ketogenic or low-carb diets, are all false and misleading

28.    Labels are the chief means by which food product manufacturers convey critical information to consumers, and consumers have been conditioned to rely on the accuracy of the claims made on these labels.

29.    Consumers including Plaintiff especially rely on label claims made by food product manufacturers such as Defendant, as they cannot confirm or disprove those claims simply by viewing or even consuming the Products.

30.    Further, federal law and corresponding state law and regulations both reflect and create reasonable consumer expectations concerning the contents of foods and beverages. That is, consumers have been conditioned to rely on the calories, dietary fiber, total carbohydrates, and net carbohydrates disclosures in a Nutrition Facts panel or on a food label when determining how much of a food product they need to consume to meet specific eating goals, including macro-counting.

31.    Plaintiff reviewed the front and back labels and Nutrition Facts panel on the Products prior to her purchase, and reviewed the statements regarding calories, total carbohydrates, dietary fiber, and net carbohydrates being made on those labels. Consumers such

as Plaintiff who viewed the Products' labels reasonably understood the Products to contain 60 calories and 4 grams of net carbs per serving. These representations were false.

32.     Consumers including Plaintiff reasonably relied on these label statements such that they would not have purchased the Products from Defendant if the truth about the Products was known, or would have only been willing to pay a substantially reduced price for the Products had they known that Defendant's representations were false and misleading.

33.     In the alternative, because of its deceptive and false labelling statements, Defendant was enabled to charge a premium for the Products relative to key competitors' products, or relative to the average price charged in the marketplace.

34.     Plaintiff suffered economic injury by Defendant's fraudulent and deceptive conduct as stated herein, and there is a causal nexus between Defendant's deceptive conduct and Plaintiff's injury.

## CLASS ACTION ALLEGATIONS

35.     Plaintiff brings this action individually and as representative of all those similarly situated pursuant to Federal Rule of Civil Procedure 23 on behalf of all consumers in the state of California who purchased the Products within four years prior to the filing of this Complaint.

36.     Excluded from the Class are Defendant and its affiliates, parents, subsidiaries, employees, officers, agents, and directors. Also excluded are any judicial officers presiding over this matter and the members of their immediate families and judicial staff.

37.     Plaintiff reserves the right to alter the Class definition, and to amend this Complaint to add additional Subclasses, as necessary to the full extent permitted by applicable law.

38.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of the claims on a class-wide basis using the same evidence as individual Class members would use to prove those elements in individual actions alleging the same claims.

39.    **Numerosity – Rule 23(a)(1)**: The size of the Class is so large that joinder of all Class members is impracticable. Plaintiff believes and avers there are thousands of Class members geographically dispersed throughout the state of California.

40.    **Existence and Predominance of Common Questions of Law and Fact – Rule 23(a)(2), (b)(3)**: There are questions of law and fact common to the Class. These questions predominate over any questions that affect only individual Class members. Common legal and factual questions and issues include but are not limited to:

   a.   Whether the marketing, advertising, packaging, labeling, and other promotional materials for Defendant's Products is misleading and deceptive;

   b.   Whether a reasonable consumer would understand the Products' labels to claim that the Products contain 60 calories and 4 grams of net carbs per serving, and reasonably relied upon those representations;

   c.   Whether Defendant was unjustly enriched at the expense of the Plaintiff and Class members;

   d.   Whether Defendant breached an express warranty;

   e.   the proper amount of damages;

   f.   the proper scope of injunctive relief; and

   g.   the proper amount of attorneys' fees.

41.    Defendant engaged in a common course of conduct in contravention of the laws Plaintiff seeks to enforce individually and on behalf of the Class. Similar or identical violations of law, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that predominate this action. The common questions will yield common answers that will substantially advance the resolution of the case.

42.    In short, these common questions of fact and law predominate over questions that affect only individual Class members.

43.    **Typicality – Rule 23(a)(3)**: Plaintiff's claims are typical of the claims of the Class members because they are based on the same underlying facts, events, and circumstances relating to Defendant's conduct.

44.    Specifically, all Class members, including Plaintiff, were harmed in the same way due to Defendant's uniform misconduct described herein; all Class members suffered similar economic injury due to Defendant's misrepresentations; and Plaintiff seeks the same relief as the Class members.

45.    There are no defenses available to Defendant that are unique to the named Plaintiff.

46.    **Adequacy of Representation – Rule 23(a)(4)**: Plaintiff is a fair and adequate representative of the Class because Plaintiff's interests do not conflict with the Class members' interests. Plaintiff will prosecute this action vigorously and is highly motivated to seek redress against Defendant.

47.    Furthermore, Plaintiff has selected competent counsel who are experienced in class action and other complex litigation. Plaintiff and Plaintiff's counsel are committed to prosecuting this action vigorously on behalf of the Class and have the resources to do so.

48.    **Superiority – Rule 23(b)(3)**: The class action mechanism is superior to other available means for the fair and efficient adjudication of this controversy for at least the following reasons:

  a.    the damages individual Class members suffered are small compared to the burden and expense of individual prosecution of the complex and extensive litigation needed to address Defendant's conduct such that it would be virtually impossible for the Class members individually to redress the wrongs done to them. In fact, they would have little incentive to do so given the amount of damage each member has suffered when weighed against the costs and burdens of litigation;

b.  the class procedure presents fewer management difficulties than individual litigation and provides the benefits of single adjudication, economies of scale, and supervision by a single Court;

c.  the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications, which would establish incompatible standards of conduct for Defendant; and

d.  the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would be dispositive of the interests of other Class members or would substantively impair or impede their ability to protect their interests.

49.    Unless the Class is certified, Defendant will retain monies received as a result of its unlawful and deceptive conduct alleged herein.

50.    Unless a class-wide injunction is issued, Defendant will likely continue to advertise, market, promote, and sell its Products in an unlawful and misleading manner, as described throughout this Complaint, and members of the Class will continue to be misled, harmed, and denied their rights under the law. Defendant continues to mislabel the Products in the manner described herein and sell them to the consuming public. Plaintiff would like to purchase the Products and other products sold by Defendant in the future, but cannot currently do so because she cannot rely on the Products' labelling, given the deceptions regarding calories and net carbs found there. An injunction prohibiting future deceptive labelling is therefore warranted and would provide Plaintiff and the Class relief.

51.    Furthermore, Plaintiff has not merely alleged an "informational" injury, but has also alleged that Defendant has been enabled to charge a price premium for the Products. Plaintiff has therefore alleged that compliance with federal and state regulations regarding the accurate reporting of calories and net carbs would cause a decrease in the price of the Products at which Plaintiff and members of the Class would be willing to buy the Products. As a result,

Plaintiff has alleged more than simply an interest in Defendant telling the truth on its labels, but an economic injury that further supports prospective injunctive relief.

52.     **Ascertainability**. To the extent ascertainability is required, the Class members are readily ascertainable from Defendant's records and/or its agents' records of retail and online sales, as well as through public notice.

53.     Defendant has acted on grounds applicable to the Class as a whole, thereby making appropriate final injunctive and declaratory relief concerning the Class as a whole.

## COUNT 1
## VIOLATION OF THE CONSUMER LEGAL REMEDIES ACT,
## CAL. CIV. CODE § 1750 *et seq.*

54.     Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

55.     Plaintiff is a "consumer" within the meaning of the Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1761(d).

56.     The sale of Defendant's Products to Plaintiff and Class members was a "transaction" within the meaning of the CLRA, Cal. Civ. Code § 1761(e).

57.     The Products purchased by Plaintiff and Class members are "goods" within the meaning of the CLRA, Cal. Civ. Code § 1761(a).

58.     As alleged herein, Defendant's business practices are a violation of the CLRA because Defendant deceptively failed to reveal facts that are material in light of the calories and net carbs claims that were made by Defendant on the front and back labels of its Products.

59.     Defendant's ongoing failure to provide material facts about its Products on its labels violates the following subsections of Cal. Civ. Code § 1770(a) in these respects:

    a.     Defendant's acts and practices constitute misrepresentations that its Products have characteristics, benefits, or uses which they do not have;

    b.     Defendant misrepresented that its Products are of a particular standard, quality, and/or grade, when they are of another;

    c.   Defendant's acts and practices constitute the advertisement of goods, without the intent to sell them as advertised;

    d.   Defendant's acts and practices fail to represent that transactions involving its Products involve actions that are prohibited by law, particularly the use of misleading nutritional labelling; and

    e.   Defendant's acts and practices constitute representations that its Products have been supplied in accordance with previous representations when they were not.

60.   By reason of the foregoing, Plaintiff and the Class have been irreparably harmed, entitling them to injunctive relief.

61.   Pursuant to Cal. Civ. Code § 1782, Plaintiff notified Defendant in writing of the particular violations of the CLRA described herein and demanded Defendant rectify the actions described above by providing complete monetary relief, agreeing to be bound by their legal obligations and to give notice to all affected customers of their intent to do so. Plaintiff sent this notice by certified mail to Defendant, at least 30 days before the filing of this Complaint.

62.   Pursuant to Cal. Civ. Code §§ 1770 and 1780, Plaintiff and the Class are entitled to recover actual damages sustained as a result of Defendant's violations of the CLRA. Such damages include, without limitation, monetary losses and actual, punitive, and consequential damages, in an amount to be proven at trial.

63.   Pursuant to Cal. Civ. Code §§ 1770 and 1780, Plaintiff is entitled to enjoin publication of misleading and deceptive nutritional labels on Defendant's Products and to recover reasonable attorneys' fees and costs.

## COUNT 2
## UNJUST ENRICHMENT

64.   Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative in the event that Plaintiff has an inadequate remedy at law.

65.   Under California law, a claim for unjust enrichment "describe[s] the theory underlying a claim that a defendant has been unjustly conferred a benefit 'through mistake,

-13-

fraud, coercion, or request.'" *Astiana v. Hain Celestial Grp., Inc.* (9th Cir. 2015) 783 F.3d 753, 762 (quoting 55 *Cal. Jur.* 3d *Restitution* § 2). Thus, when a plaintiff alleges unjust enrichment, the Court should "construe the cause of action as a quasi-contract claim seeking restitution." *Rutherford Holdings, LLC v. Plaza Del Rey* (2014) 223 Cal.App.4th 221, 225. Courts in California have allowed unjust enrichment and CLRA claims to proceed in the alternative. *See Scheibe v. Livwell Prods., LLC,* No. 23-cv-216, 2023 WL 4414580, at *8 (S.D. Cal. 2023).

66.     Defendant, through its marketing and labeling of the Products, misrepresented and deceived consumers by misrepresenting that the Products contained 60 calories and 4 grams of net carbs per serving.

67.     Defendant did so for the purpose of enriching itself and it in fact enriched itself by doing so.

68.     Consumers conferred a benefit on Defendant by purchasing the Products, including an effective premium above their true value. Defendant appreciated, accepted, and retained the benefit to the detriment of consumers.

69.     Defendant continues to possess monies paid by consumers to which Defendant is not entitled.

70.     Under the circumstances it would be inequitable for Defendant to retain the benefit conferred upon it and Defendant's retention of the benefit violates fundamental principles of justice, equity, and good conscience.

71.     Plaintiff seeks disgorgement of Defendant's ill-gotten gains and restitution of Defendant's wrongful profits, revenue, and benefits, to the extent, and in the amount, deemed appropriate by the Court, and such other relief as the Court deems just and proper to remedy Defendant's unjust enrichment.

72.     Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact as a result of Defendant's actions as set forth above.

**COUNT 3**
**BREACH OF EXPRESS WARRANTY**

73.    Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

74.    Defendant, as the designer, manufacturer, marketer, distributor, and/or seller, expressly warranted that the Products contained 60 calories and 4 grams of net carbs per serving.

75.    Defendant's express warranties, and its affirmations of fact and promises made to Plaintiff and the Class and regarding the Products, became part of the basis of the bargain between Defendant and Plaintiff and the Class, which creates an express warranty that the Products would conform to those affirmations of fact, representations, promises, and descriptions.

76.    The Products do not conform to the express warranty that the Products contain 60 calories and 4 grams of net carbs per serving, as set forth herein.

77.    As a direct and proximate cause of Defendant's breach of express warranty, Plaintiff and Class members have been injured and harmed because: (a) they would not have purchased the Products on the same terms if they knew the truth about the Products' calories and net carbs claims; (b) they paid a price premium based on Defendant's express warranties; and (c) the Products do not have the characteristics, uses, or benefits that were promised.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests the Court grant the following relief against Defendant:

a.    Certifying the Class;

b.    Declaring that Defendant violated the CLRA and/or was unjustly enriched and/or breached an express warranty;

c.    Awarding actual and other damages as permitted by law;

d.    Ordering an awarding of injunctive relief as permitted by law, including enjoining Defendant from continuing the unlawful practices as set forth herein, and ordering Defendant to engage in a corrective advertising campaign;

e.   Ordering Defendant to pay reasonable attorneys' fees and litigation costs to Plaintiff;

f.   Ordering Defendant to pay both pre- and post-judgment interest on any amounts awarded; and

g.   Such other relief as the Court may deem just and proper.

TRIAL BY JURY IS DEMANDED ON ANY COUNTS SO TRIABLE.

Respectfully submitted,


*/s/ Charles C. Weller*
Charles C. Weller (Cal. SBN: 207034)
Attorney for Plaintiff

pFebruary 25, 2025